# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2010

No. 09-60562

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JACQUALINE CRAWLEY,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:07-CR-125-4

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Jacqualine Crawley appeals following her conviction for conspiracy to commit health care fraud, substantive health care fraud, and making false statements relating to health care. The charges resulted from Crawley's participation in a scheme to submit false and inflated bills to Medicare for physical therapy-type services rendered to elderly patients. She challenges both her conviction and sentence. We affirm Crawley's conviction and sentence but interpret the sentence to reflect that the restitution ordered by the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as a condition of Crawley's supervised release is subject to her ability to pay as ordered.

Crawley first argues that the district court erroneously instructed the jury on deliberate ignorance and then compounded the error by refusing to give a requested balancing instruction. We find no abuse of discretion because the court's charge was supported by the evidence. *See United States v. Miller*, 588 F.3d 897, 905 (5th Cir. 2009). A deliberate ignorance instruction is proper when "the evidence shows (1) subjective awareness of a high probability of the existence of illegal conduct and (2) purposeful contrivance to avoid learning of the illegal conduct." *United States v. Nguyen*, 493 F.3d 613, 619 (5th Cir. 2007) (internal quotation and citation omitted). Viewed in the light most favorable to the Government, the evidence showed that Crawley misrepresented to several witnesses her qualifications as a physical or occupational therapist, giving the false impression that a licensed therapist was training technicians and supervising the services provided to patients. The evidence also showed that Crawley, who was responsible for day to day operation of the company known as Rehabilicare, added services to patient treatment records that had not been performed and instructed technicians to date falsely the signature blocks for reviewing physicians. Furthermore, Crawley was aware from attending a Medicare billing seminar that Rehabilicare's billing practice based on the body parts treated rather than on time spent with the patients was improper. We conclude that the evidence was sufficient to show that Crawley had a subjective awareness of a high probability of illegal conduct. *See Nguyen*, 493 F.3d at 619.

The evidence also permits an inference of purposeful contrivance to avoid learning of illegal conduct. The evidence showed that Crawley heard the instructor from the Medicare seminar state that if a company billed based on body parts, it would be "in big trouble." In her defense, Crawley relied on a training manual statement that she believed allowed for billing based either on

treatment areas *or* on time, and she contended that this was a "gray" area. But the manual further indicated that the method of billing was dependent upon the description of the billing code. The evidence permits an inference that Crawley ignored this part of the statement, as the Government presented evidence that Rehabilicare's billing codes were time-based. Under the circumstances, Crawley's failure to question further Rehabilicare's billing method suggests purposeful contrivance. *See United States v. Lara-Velasquez*, 919 F.2d 946, 952 (5th Cir. 1990). In any event, we also conclude that the same evidence showing Crawley's subjective awareness of the probability of illegal conduct also supports a conclusion that Crawley had actual knowledge that her conduct was illegal. Therefore, any error in the court's charge was harmless. *See United States v. Wofford*, 560 F.3d 341, 354 (5th Cir. 2009).

Crawley next challenges the sufficiency of the evidence to support her conviction, arguing that she lacked intent to defraud Medicare and that she was merely mistaken about the Medicare billing regulations. We are not persuaded. The evidence showed that Crawley and co-defendant Pam Hull were intimately involved in the business of Rehabilicare. Crawley, Hull, and other co-owners made decisions together about Rehabilicare's operation. Crawley helped recruit doctors and falsely represented the qualifications of herself and Rehabilicare's staff. She altered patient treatment records and instructed technicians to falsely date treatment forms. She advocated the continued use of Rehabilicare's billing practice even after she learned the practice was improper. When all inferences are drawn in the light most favorable to the Government, the evidence was sufficient for the jury to find that Crawley participated in a conspiracy to defraud Medicare, committed health care fraud, and made false statements about health care. *See United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir. 2009); *see also* 18 U.S.C. §§ 371, 1035, 1347.

No. 09-60562

Crawley further argues that the district court erroneously admitted expert testimony from Government witness Dr. William Woodall, who she argues was not properly disclosed and was permitted to give an opinion beyond his expertise. The district court is given wide latitude in the admission of expert testimony, and we will not overturn the district court's decision unless it was manifestly erroneous. *See United States v. Simmons*, 470 F.3d 1115, 1121 (5th Cir. 2006). We decline to do so here. We conclude that the Government's disclosure of Dr. Woodall complied with FEDERAL RULE OF CRIMINAL PROCEDURE 16. Furthermore, we are satisfied that Dr. Woodall's testimony, including opinions about physical medicine and Rehabilicare to which Crawley did not object, fell within his expert knowledge and qualifications. *See United States v. Anderson*, 560 F.3d 275, 281 (5th Cir. 2009) (upholding admission of expert testimony where witness was qualified as an expert based on experience); FED. R. EVID. 702.

Finally, Crawley challenges the district court's restitution order on the grounds that the court improperly determined the restitution amount, set an unreasonable monthly payment schedule, and improperly conditioned her supervised release on her payment of restitution. We review the legality of the district court's restitution order de novo. *United States v. Taylor*, 582 F.3d 558, 565 (5th Cir. 2009). If a restitution order is legally permitted, we review the order for an abuse of discretion. *Id.*

The district court's determination of the total restitution amount included losses attributable to Crawley as a result of her participation in the business of Rehabilicare and a related company known as Mississippi Care Partners. But it also included losses resulting from Crawley's activity with two other companies, Progressive Physical Medicine and Statewide Physical Medicine. Crawley objects to the inclusion of losses from Progressive and Statewide in the restitution order because she was not charged with any offenses related to those

4

companies.  We conclude, however, that the district court did not abuse its discretion.  Because Crawley's counts of conviction required proof of a conspiracy or a scheme, the district court was entitled to include within its restitution order all losses resulting from the conspiracy or scheme, which included Crawley's activity related to Progressive and Statewide.[1] *See United States v. Maturin*, 488 F.3d 657, 661 (5th Cir. 2007); *see also* 18 U.S.C. § 3663A(a)(2).  The district court was also entitled to rely on information contained in the presentence report (PSR) as to the amount of loss because Crawley offered no evidence contesting the PSR and did not show that it was inaccurate or unreliable.  *See United States v. Ford*, 558 F.3d 371, 376–77 (5th Cir. 2009).

The district court ordered Crawley to pay restitution at a rate of $2500 per month, and it made the restitution payments a condition of Crawley's supervised release.  Crawley argues that she should be ordered to make only nominal restitution payments and that payment should not be a condition of supervised release because of her inability to pay.  Under the Mandatory Victims Restitution Act, the district court was required to order restitution in the full amount of loss regardless of the defendant's economic circumstances.  *See* 18 U.S.C. § 3664(f)(1)(A).  The district court has discretion to order only nominal periodic payments, 18 U.S.C. § 3664(f)(3)(B), and to order restitution as a condition of supervised release.  *See Maturin*, 488 F.3d at 660 n.1; 18 U.S.C. § 3583(d).  Nevertheless, the financial resources of the defendant are relevant to determining the schedule under which restitution is to be paid.  *See United States v. Calbat*, 266 F.3d 358, 366 (5th Cir. 2001); 18 U.S.C. § 3664(f)(2).  The

---

[1] Crawley also argues that the amounts related to Progressive and Statewide should be excluded from the restitution order because they are beyond the temporal scope of the indictment.  Although she argued in the district court that these amounts were not charged in the indictment, Crawley raised no argument about their temporal relationship to the charges.  Because she raises this argument for first time on appeal in her reply brief, we decline to consider it.  *See United States v. Aguirre-Villa*, 460 F.3d 681, 683 n.2 (5th Cir. 2006).

district court is in the best position to determine the defendant's ability to pay and the reasonableness of a payment schedule. Having said that, however, we note that in this case the district court determined that Crawley lacked the ability to pay a fine or interest on the restitution, and the PSR shows that Crawley's current financial means are limited. The Government makes no argument about Crawley's ability to pay. We see no reason to believe the court intended to order under those circumstances that Crawley could be sent back to prison for failure to make restitution payments in a timely manner. *See Calbat*, 266 F.3d at 366. We believe that the district court's judgment should be interpreted to be that supervised release is not conditional upon payment of restitution *if* Crawley is unable to pay as ordered.

AFFIRMED.