# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 29, 2022

Lyle W. Cayce
Clerk

No. 21-51084

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeffrey Thomas Scott,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-66-1

Before Smith, Barksdale, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Jeffrey Thomas Scott was charged and convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In this appeal, Scott challenges the district court's denial of his motion to suppress the firearm and statements he made to arresting officers. For the reasons set forth below, we AFFIRM the denial of the suppression motion, but we

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-51084

REMAND to the district court for the limited purpose of correcting a clerical error in the district court's judgment.

## I.

In February 2021, the Midland Police Department dispatched several officers to an apartment complex to locate an individual named "Brooke" who was suspected of violating a drug court order.  When officers arrived at Brooke's apartment, they knocked on the door, and a man —later identified as Scott—approached the doorway.  The officers asked Scott to step outside and questioned whether he had any weapons on him.  He responded "no." One officer, Officer Fonseca, grabbed Scott by the sleeve of his sweatshirt to move him out of the way of the apartment door.  Scott asked why he was being searched (even though no one was searching Scott at this moment). After this comment, however, Officer Fonseca ordered another officer to perform a pat down.  Scott walked past the officers and then took off running. The officers chased after Scott, quickly apprehending him in the stairwell of the apartment complex.  Scott immediately informed the officers that he had a gun on him.  The officers secured the firearm and placed Scott in handcuffs. One officer asked Scott if he was a felon, and he responded that he was.

Based on the foregoing events, the officers took Scott into custody, and the Government charged him with being a felon in possession of a firearm.  Scott subsequently moved to suppress the firearm and the statements he made to the arresting officers.  The district court held an evidentiary hearing on the suppression motion in which the Government presented testimony from two of the arresting officers and body camera footage documenting the interaction.

The district court initially granted Scott's motion.  It concluded that the officers lacked reasonable suspicion to conduct an investigatory stop at the time Officer Fonseca ordered the pat down.  Therefore, the firearm and

statements were the products of an unsupported investigative stop. However, the district court later granted the Government's motion for reconsideration, reversing its earlier suppression order. This time it agreed with the Government that (1) the officers did not seize Scott until they apprehended him in the stairwell, (2) the officers had reasonable suspicion to seize Scott at that point, and (3) the officers had a reasonable basis to search Scott for weapons after he admitted he was armed. Scott subsequently proceeded to a bench trial, in which the district court found him guilty. He timely appealed.

## II.

When considering the denial of a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). We view the evidence presented at the suppression hearing in the light most favorable to the prevailing party, here, the Government. *United States v. Cervantes*, 797 F.3d 326, 339 (5th Cir. 2015). We defer to the district court's factual findings unless we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).

The Fourth Amendment protects "against unreasonable searches and seizures," U.S. CONST. amend. IV, and evidence obtained "in violation of the amendment may be excluded from introduction at trial," *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2702 (2022). This case primarily concerns a "seizure," which is, inter alia, "[a] temporary, warrantless detention of an individual." *Id.* A seizure takes the form of either (1) "physical force" or (2) a "show of authority" that "in some way restrain[s] the liberty" of an individual. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "[A] seizure under the Fourth Amendment must be justified at its inception"; therefore, "our first task is ordinarily to determine when

the seizure occurred." *See Flowers*, 6 F.4th at 655 (internal citation and quotation marks omitted).

After reviewing the officer testimony and body camera footage, the district court concluded that Scott was seized at the moment the officers apprehended him in the stairwell. Scott challenges this conclusion on two grounds: he maintains that he was seized prior to this moment (1) by a show of authority or, alternatively, (2) by force when Officer Fonseca grabbed his sweatshirt.

At the outset, we reject Scott's argument that he was seized by a "show of authority." To evaluate whether such a seizure occurred, we apply the objective test set forth in *United States v. Mendenhall*, 446 U.S. 544 (1980), which states that a seizure by a show of authority occurs if the totality of the circumstances demonstrates that a reasonable person, measured objectively from an innocent person's perspective, "would have believed that he was not free to leave." *Id.* at 554. Importantly, under Supreme Court precedent, to constitute a seizure, "submission to the assertion of authority" is necessary. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis omitted); *Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020) ("[A] Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority *to which an individual submits*." (emphasis added)).

Here, Scott plainly did not yield to any authority. To the contrary, he *ran away from* the officers instead of obeying Officer Fonseca's demands. As the Supreme Court has guided, a request that does not generate the desired order cannot possibly produce a seizure. *See Hodari D.*, 499 U.S. at 628 (seizure could not "have occurred during the course of" a police chase because "that 'show of authority' did not produce [the individual's] stop." (quotation omitted)). Because compliance, a necessary prerequisite, is

absent, we agree with the district court's conclusion that this was not a seizure by "show of authority." *See United States v. Silva*, 957 F.2d 157, 159 (5th Cir. 1992) (noting that a mere command, without submission by a defendant, would not constitute a seizure under Supreme Court precedent); *see also Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) ("The latter does not become an arrest unless and until the arrestee complies with the demand.").

We similarly reject Scott's argument that a seizure by force occurred when Officer Fonseca tugged on Scott's sweatshirt sleeve. Not "every physical contact between" an officer and an individual is "a Fourth Amendment seizure"; rather, "[a] seizure requires the use of force *with intent to restrain*." *Torres*, 141 S. Ct. at 998. The district court found that Officer Fonseca grabbed Scott's sweatshirt sleeve with objective intent to move him out of the way of the apartment door—not to apprehend him. Because "force intentionally applied for some other purpose" does not amount to a Fourth Amendment seizure, *Torres*, 141 S. Ct. at 998, we agree with the district court's conclusion that Officer Fonseca's grab of Scott's sweatshirt sleeve was not a seizure.

Having rejected Scott's arguments to the contrary, we hold that the district court did not err in its conclusion that the officers seized Scott at the moment they apprehended him in the stairwell.

### III.

We now turn to the reasonable suspicion inquiry. A seizure comports with the Fourth Amendment if an officer has reasonable suspicion to believe that a crime has occurred or is about to occur. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion is a low threshold; it is not probable cause. *See United States v. Castillo*, 804 F.3d 361, 364, 367 (5th Cir. 2015). Instead, an officer has reasonable suspicion if, based on the totality of the circumstances, he has "a particularized and objective basis for suspecting

the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

The district court concluded that the officers had reasonable suspicion to detain Scott, and we agree—at the moment Scott was apprehended, the officers had specific and articulable facts upon which to form a reasonable suspicion that Scott was involved in criminal activity. *See id.* First, Scott was inside Brooke's apartment, whom officers suspected of criminal activity. Because of Scott's "close interaction" with Brooke, he "could be independently suspected of involvement" in crime. *See United States v. Thomas*, 997 F.3d 603, 611 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 828 (2022). Thus, his "propinquity" to Brooke supported the officers' reasonable suspicion. *See id.* Second, Scott made combative and evasive statements to the officers, behavior which the Supreme Court has instructed can also support reasonable suspicion. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (concluding that "nervous, evasive behavior" supported reasonable suspicion). Finally, the fact that Scott fled from the officers—particularly in light of the aforementioned facts—weighs in favor of reasonable suspicion. *See United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976).

In sum, we conclude that the officers had reasonable suspicion to seize Scott in the stairwell. Scott's immediate statement to the officers that he was armed then gave authority to the officers to perform a limited search of Scott's person for firearms and, upon their determination that he was a felon, to retain the seized firearm. *See United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993) (holding that, where an officer has reasonable grounds to believe an individual is armed, the officer may conduct a limited search of the individual to discover weapons that might be used to assault the officer). Because both the seizure and search were reasonable, the officers did not

No. 21-51084

violate the Fourth Amendment.  Therefore, we conclude that the district court did not err in denying the motion to suppress.[1]

**IV.**

We note, however, that the district court's judgment contains an error; the judgment states that Scott pleaded guilty to his offense, when, in fact, Scott was found guilty after a bench trial conducted under a stipulation of facts.  We "may at any time correct a clerical error in a judgment."  FED. R. CRIM. P. 36; *see also  United States v. Spencer*, 513 F.3d 490, 491–92 (5th Cir. 2008) (concluding that Rule 36 is the appropriate vehicle to correct errors in the written judgment that do not substantively alter the orally announced sentence).  Accordingly, we remand to the district court for the limited purpose of correcting the judgment to reflect a finding of guilty after a bench trial on stipulated facts rather than a plea of guilty.

We AFFIRM the denial of the suppression motion and REMAND to the district court for the limited purpose of correcting the judgment to reflect the conviction following a bench trial rather than a plea of guilty.

---

[1] The Government argues that the officers' seizure and search were separately warranted as an exercise of their authority to secure a location and detain its occupants under *Michigan v. Summers*, 452 U.S. 692 (1981).  The district court did not consider this argument.  Because we affirm the district court's denial on the alternative basis above, we do not address the applicability of *Summers* here.